COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

LISA MARIE GROFFEL

v.      Record No. 1427-17-2

NEW KENT DEPARTMENT OF
 SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
MARCH 20, 2018

UNPUBLISHED

FROM THE CIRCUIT COURT OF NEW KENT COUNTY
B. Elliott Bondurant, Judge

(Kelli King, on brief), for appellant.

(Andrea G. Erard; Louise A. Moore, Guardian *ad litem* for the minor
children, on brief), for appellee.


Lisa Marie Groffel (mother) appeals the orders terminating her parental rights to A. and M.

and approving the goals of adoption. Mother argues that the trial court erred by (1) terminating her

parental rights to A. and M. pursuant to Code § 16.1-283(B) and (C) because "good cause has been

shown for the failure of [mother] to maintain continuing contact with and to substantially plan for

the future of her children and there were not reasonable and appropriate efforts made by New Kent

Department of Social Services in strengthening the parent-child relationship;" (2) terminating her

parental rights to A. and M. pursuant to Code § 16.1-283(E) because the New Kent Department of

Social Services (the Department) "failed to show that the involuntary termination of another child of

[mother] was substantially similar to an involuntary termination under Virginia statutes;" and

(3) approving the goals of adoption for A. and M. because the Department "failed to make

reasonable efforts to return the children home." Upon reviewing the record and briefs of the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

parties, we conclude that this appeal is without merit.[1]  Accordingly, we summarily affirm the

decision of the trial court.  See Rule 5A:27.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable to the prevailing party below, in this case the Department.'"  Farrell v. Warren Cty.

Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v.

Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

Mother and Howard Groffel (father) are married and the biological parents of A. and M.

The Department was involved with the family in 2014 due to allegations of inadequate

supervision.  The Department ultimately closed the case in August 2015.

On November 17, 2015, father called 911 from his car when he was in Fairfax County.

When the police arrived, father was disoriented and confused.  The police discovered A. and M.

in father's car.  At the time, A. was seven years old and M. was five years old.  Father was

transported to a Fairfax hospital, where he stayed for four or five days on a temporary detention

order.  Since mother was incarcerated at the time and there were no available relatives, the

Fairfax County Department of Family Services took custody of the children and placed them in

foster care.  On November 24, 2015, a family partnership meeting was held.  Mother participated

and said that she thought it would be best for the children to remain in foster care.  She expressed

concerns about father's mental health.  Father was no longer in the hospital, but he did not attend

the meeting.  Also, on November 24, 2015, the Fairfax County Juvenile and Domestic Relations

---

[1] In her opening brief, mother states that her assignments of error were not preserved and asks this Court to consider her arguments pursuant to the ends of justice.  The Court finds that mother's arguments were preserved in her closing argument to the trial court.  Rule 5A:18; see Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991) (*en banc*) (In a bench trial, an appellant can preserve her issues for appeal in a motion to strike, in closing argument, in a motion to set aside the verdict, or in a motion to reconsider.).

District Court made a finding of abuse/neglect and transferred the case to New Kent County. The children came into the Department's care on that same date.

In February 2016, mother was released from jail. Upon her release, the Department referred mother to a parenting class and recommended parent coaching, but mother did not follow through with these services. The Department also tried to schedule visitation between the parents and the children. Initially, the Department planned to coordinate a visit with mother and father at the same time. Mother cooperated by signing the Department's visitation agreement, but father refused to sign the visitation agreement. On March 9, 2016, the Department provided transportation for mother and arranged visitation via Skype between mother and the children. The visit was "fairly positive," other than mother making an inappropriate comment at the end of the visit.

The Department required mother to complete a substance abuse assessment and follow any treatment plans. Mother started taking substance abuse classes, but was discharged from the group after she tested positive for alcohol and drugs on March 22, 2016. Mother tested positive for morphine, Xanax, and oxycodone, which she explained was prescribed to her for kidney stones. Mother admitted that she drank a 12-pack of beer in one sitting because she was "overwhelmed" and "stressed out" since she was not able to visit with her children. Since mother violated the terms of her probation, her suspended sentence was revoked, and she received an active prison sentence of three years.

In February 2017, the Department filed petitions to terminate mother's parental rights to A. and M.[2] On June 5, 2017, the New Kent County Juvenile and Domestic Relations District

---

[2] The Department also filed petitions to terminate father's parental rights, and the JDR court terminated father's parental rights to the children. Father appealed to the circuit court, which also terminated father's parental rights to A. and M. Father appealed the circuit court's rulings to this Court. See H. Groffel v. New Kent Dep't of Soc. Servs., Record No. 1397-17-2.

Court (the JDR court) entered orders terminating mother's parental rights to A. and M. Mother appealed the decisions to the circuit court.

On August 2, 2017, the parties appeared before the circuit court. At the hearing, mother admitted that she had two other children who had been removed from her custody in Massachusetts because she was incarcerated and had "domestic violence situations." Mother explained that eleven years ago, she was incarcerated in Massachusetts for assault charges relating to alcohol abuse. She also stated that at the time of the circuit court hearing, she was on the waiting lists at the prison for Narcotics Anonymous (NA), Alcoholics Anonymous (AA), and Seeking Safety, which is for trauma and substance abuse. Mother testified to participating in NA and AA meetings while she was in the local jail. She admitted to having "an issue with alcohol," but denied having any problems with drugs and said that she had not used cocaine or heroin in fifteen years.

The foster mother testified about the children. Both of the children have special needs and learning disabilities. When M. first entered foster care, he was nonverbal. M. was five years old and did not know his colors, shapes, numbers, or ABC's. Even though she was seven years old when she entered foster care, A. also did not know her ABC's and could only count to five. The foster mother said that initially, the children did not like to bathe unless they were with each other, and they displayed some sexually inappropriate behavior. Both children were aggressive and did not like to be touched. The school frequently called the foster mother because M. had been aggressive with another student or damaged property. M. hit and bit the foster mother. He also hit himself or banged his head on the floor. A. was "unkind" to her peers and yelled. Neither one of the children knew how to eat with silverware, so they shoved the food in their mouths. They were malnourished and refused to eat anything other than McDonald's. The children could not dress themselves. Both had trouble sleeping and had frequent nightmares.

Both children wore pull-ups due to being incontinent. The children had trouble with fine motor skills and could not brush their teeth on their own.

Both children also had physical and health issues when they entered foster care. A. required surgery to correct two lazy eyes. She also required oral surgery to remove two baby teeth and had to have cavities filled. Both children had to have their tonsils and adenoids removed, and they needed tubes for their ears. Both children needed braces for their feet and legs. Both required counseling, physical therapy, speech therapy, and occupational therapy.

At the time of the circuit court hearing, the children had improved physically, socially, and academically. Both children have learning disabilities and have individualized education programs (IEP). A.'s IEP states that she was diagnosed with brain damage secondary to autism. M.'s IEP states that he was diagnosed with autism and attention deficit disorder. The foster mother homeschooled the children over the summer. At the time of the circuit court hearing, A. was reading at grade level and could write her ABC's. She could count to 100 and was learning addition, subtraction, and multiplication. M. knew his ABC's, colors, and days of the week. A. could dress herself, but needed some assistance with buttons and zippers. M. still needed help dressing himself. Both children enjoyed going to school and social activities. Both children were calmer. The foster mother said that each child still went to approximately five appointments each week.

At the conclusion of all of the evidence and argument, the circuit court terminated mother's parental rights pursuant to Code § 16.1-283(B), (C)(1), (C)(2), and (E). This appeal followed.

ANALYSIS

Mother argues that the trial court erred in terminating her parental rights to A. and M. pursuant to Code § 16.1-283(B), (C), and (E). "Where, as here, the court hears the evidence *ore*

*tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). "When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'" Id. (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Mother argues that the circuit court should have recognized the efforts she made when she was not incarcerated and should have considered the barriers she faced to remedying the situation while she was incarcerated. Mother contends that she cooperated with the Department when she was not incarcerated. She took the substance abuse assessment and started classes. She emphasized the close relationship she had with the children and testified that she addressed the children's needs before she was incarcerated.[3] Mother asserts that the Department did not provide her with reasonable and appropriate services after she was incarcerated, but she signed up for AA, NA, and Seeking Safety. She testified that she did not qualify for the Therapeutic Community Program. Mother contends that it was "unrealistic to expect [her] to fulfill the court ordered reunification requirements within the required statutory timeframe."

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

---

[3] Mother testified about taking the children to doctor's appointments and getting tubes in M.'s ears. She said that she sought speech and occupational therapy for M. and counseling for A.

In this case, the children entered foster care after father drove them to Fairfax County when he had serious mental health issues that required an extended hospitalization and mother was incarcerated. Approximately three months later, mother was released from jail and cooperated with the Department by getting a substance abuse evaluation and starting classes. However, within a few weeks, mother tested positive for drugs and alcohol. She violated the terms of her probation and received a three-year active sentence. The circuit court reminded mother that "[s]he chose to drink that 12-pack that night," and her actions caused her to be incarcerated again.

Contrary to mother's arguments, the Department was not required to offer her services while she was incarcerated. See Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163-64, 590 S.E.2d 575, 583 (2004). This Court has held that "[i]t would be patently unreasonable to require the Department, under such circumstances, to continue to offer services." Id. Nevertheless, the Department visited mother in jail and provided her with pictures and drawings the children made until June 2016 when mother asked the Department to stop visiting her and sending her these items because she could not take them with her when she transferred to the state facility.

> While long-term incarceration does not, *per se*, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

At the time of the circuit court hearing, the children had been in foster care for almost two years. Mother was not able to take care of the children because she remained incarcerated. She testified that her expected release date was November 2018, but hoped to get out earlier. She did not have a place to live or a job upon her release. Mother had not addressed her

substance abuse problems, although she was on waiting lists for NA, AA, and Seeking Safety. She said that she also was on a waiting list for the Matrix program, which was a re-entry program. However, she was on a transfer list to go to either Powhatan or Goochland, and if she were transferred, she would have to sign up and be placed on different waiting lists for programs.

"The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst County Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322, 746 S.E.2d 509, 522 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)).

The evidence proved that although the children have improved while in foster care, they have special needs that demand significant time and attention. They have numerous appointments on a weekly basis. The children need consistency and stability, which mother is unable to provide.

The trial court found that it was in the children's best interests to terminate mother's parental rights and approve the goal of adoption. The trial court found the foster mother's testimony about the condition of the children from the time they entered foster care until the circuit court hearing to be "quite candid" and "more believable" than mother or father's testimony. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of

the witness' testimony." Layman v. Layman, 62 Va. App. 134, 137, 742 S.E.2d 890, 891 (2013) (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*)).

Based on the totality of the circumstances, the trial court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2) and approving the goal of adoption.

The trial court also terminated mother's parental rights pursuant to Code § 16.1-283(B), (C)(1), and (E). "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the trial court erred in terminating mother's parental rights pursuant to Code § 16.1-283(B), (C)(1), and (E).

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.